U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
FILED  12-5-19
WILLIAM W. BLEVINS
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 19-155 |
| v. | * | SECTION: L |
| DOMINIQUE ALAINA BERRY<br>(a/k/a Desiree Knowles) | * | |

\* \* \*

## FACTUAL BASIS

The defendant, **DOMINIQUE ALAINA BERRY** ("**BERRY**" or "**DEFENDANT**"), has agreed to plead guilty as charged to the Bill of Information now pending against her, charging **DOMINIQUE ALAINA BERRY** with conspiracy to commit wire fraud, bank fraud, and interstate transportation and use of an interstate facility with intent to carry on unlawful activity, in violation of Title 18, United States Code, Sections 371, 1343, 1344 and 1952(a)(3) (Count 1), and aggravated identity theft, in violation of Title 18, United States Code, Section 1028A (Count 2). The Government and the **DEFENDANT** do hereby stipulate and agree that the following facts set forth a sufficient factual basis for the crimes to which the **DEFENDANT** is pleading guilty. The Government and the **DEFENDANT** further stipulate that the Government would have proven, through the introduction of competent testimony and admissible, tangible exhibits, the following facts, beyond a reasonable doubt, to support the allegations in the Bill of Information now pending against the **DEFENDANT**.

**Background**

The Government would establish that **BERRY** was a resident of Tangipahoa Parish, Louisiana, within the Eastern District of Louisiana. **BERRY** was born in July 1989.

Page 1 of 14

AUSA _EaP_
Defendant _DB_
Defense Counsel _CCK_

The Government would establish that **R.S.** was born in April 1981 and has lived for extended periods of time in both California and the New Orleans, Louisiana area.

The Government would further establish that under the laws of the States of Louisiana, California, Arizona, New Mexico, Texas, and Georgia, among others, prostitution constituted a criminally punishable unlawful act.

The Government would further establish that **BERRY** and **R.S.** met in the New Orleans area in about early 2013. **BERRY** and **R.S.** soon developed a romantic relationship. Approximately three weeks after **BERRY** met **R.S.**, **R.S.** convinced **BERRY** to begin working for an escort agency under the supervision of **R.S.** In truth and in fact, **BERRY'S** work for the escort agency constituted engaging in prostitution activities—sexual acts in exchange for financial compensation. **R.S.** required **BERRY** to give him the money from prostitution dates. **BERRY** engaged in prostitution activities at **R.S.'s** direction and supervision. On numerous occasions, **R.S.** threatened, slapped, struck, beat, and choked **BERRY** for the purpose of establishing dominion and control over her and controlling her behavior. **R.S.** typically did so when he believed that **BERRY** was not performing her role efficiently or effectively, when she acted outside of **R.S.'s** control or direction, or when **BERRY** criticized **R.S.'s** behavior, including recruiting other females to join their enterprise.

As part of their criminal operation, **R.S.** and **BERRY** used the Internet to post listings on various location-specific online bulletin boards and websites specializing in classified advertisements. The online bulletin boards and websites were commonly used to advertise sexual services in exchange for money. Through the online advertisements, **R.S.** and **BERRY** received telephone calls, emails, and text messages inquiring about, scheduling, and arranging prostitution

AUSA _____
Defendant _____
Defense Counsel _____

calls with **BERRY**. **R.S.** and **BERRY** travelled nationally engaging in this prostitution enterprise. As part of the business, **R.S.** and **BERRY** arranged for **BERRY** to engage in prostitution dates on an "out call" basis, meaning that **BERRY** would meet a customer at a location chosen by the customer, such as his residence or hotel room. **R.S.** would typically transport **BERRY** to and from the out call prostitution date.

The Government would further establish that about two months after **BERRY** began working as an escort, **R.S.** initially coerced **BERRY**, through promises of making money and obtaining custody of her children, into a prostitution-based criminal operation. Thereafter, the operation evolved into one that involved incapacitating customers and then stealing their valuables.

The Government would further establish that the method of the escalated enterprise involved several steps. First, **R.S.** and **BERRY** advertised **BERRY'S** services on an out-call basis and scheduled dates at customers' residences. In the advertisements, **BERRY** was frequently referred to by the alias "Desiree Knowles," among others. The advertisements offered either prostitution services or companionship. After scheduling a date, **R.S.** gave **BERRY** illegal drugs and prescription medication with neuro-suppressive side effects, including Valium, Trazodone, Depakote, and Seroquel, and directed her to place the drugs surreptitiously into the prostitution date's alcoholic beverage. **R.S.** obtained the drugs from multiple sources, including relatives and prior victims. Once at the prostitution customer's residence, **BERRY** would drink with the customer until he was incapacitated with alcohol that **BERRY** had spiked with drugs provided to her by **R.S.** **R.S.** directed **BERRY** to contact **R.S.** once the customer became unresponsive, and then one or both of them would steal valuables, including credit cards, cash, jewelry, automobiles, computers, televisions, cellular phones, firearms, and prescription medication from prostitution

AUSA _Erf_
Defendant _RB_
Defense Counsel _CeK_

customers. On at least one occasion, other individuals assisted in stealing items from a customer, specifically a motor vehicle. **R.S.** and **BERRY** would then use the stolen credit cards without the owner's authorization and sell the stolen valuables at pawn shops or online. Between not later than November 2015 and September 2017, **R.S.** and **BERRY** implemented the above-described scheme on at least fifty (50) occasions throughout the United States, including California, Arizona, New Mexico, Texas, Louisiana, and Georgia.

### Victim 1: Salt River, Arizona—June 2016

The Government would further establish, through the introduction of documentary evidence and eyewitness testimony, that in about June 2016, **BERRY**, using the alias "Destiny," met Victim 1, an adult male, in a casino at Talking Stick Resort in Salt River, Arizona. Thereafter, **BERRY** accompanied Victim 1 to his hotel room. Based on **BERRY'S** representations to Victim 1, Victim 1 understood that she was accompanying him to his hotel room for the purpose of engaging in sexual contact. After arriving in Victim 1's room, **BERRY** supplied a quantity of an unidentified substance to Victim 1 without his knowledge or authorization. **BERRY** was given the substance by **R.S.** and told by **R.S.** to use it to incapacitate Victim 1. Thereafter, Victim 1 became incapacitated. Once Victim 1 was unconscious, **BERRY**, acting at **R.S.**'s direction, stole Victim 1's wallet and cellular telephone. Victim 1's wallet contained his driver's license, one or more credit cards, and approximately $250 in cash.

The Government would further establish that on about June 6, 2016, **BERRY** and **R.S.** traveled to a Target store located near Salt River, Arizona in a white Mercedes Benz automobile bearing Arizona license plate BWB6164. Once at the Target store, **BERRY** attempted to use

AUSA _EaP_
Defendant _AB_
Defense Counsel _CeP_

Victim 1's Citibank MasterCard credit card ending in 1010 to make two purchases in the amounts of $406.00 and $106.00, respectively, without Victim 1's knowledge or authorization.

**Victim 2: Tucson, Arizona—October 2016**

The Government would further establish, through the introduction of documentary evidence and eyewitness testimony, that **BERRY** met Victim 2, an adult male, in or about October 2016, in the Tucson, Arizona area. Victim 2 and **BERRY** met through an online dating application/website. Thereafter, Victim 2 and **BERRY** agreed to have dinner. On about October 11, 2016, Victim 2 met **BERRY** at a restaurant in the Tucson, Arizona area. R.S. drove **BERRY** to the restaurant in white Mercedes Benz R35 bearing Arizona license plate BWB6164. Based on representations **BERRY** made to Victim 2 during dinner, Victim 2 invited **BERRY** to his residence for the purpose of engaging in sexual contact.

The Government would further establish, through the introduction of documentary evidence and eyewitness testimony, that after arriving at Victim 2's residence, **BERRY** and Victim 2 consumed alcoholic beverages and engaged in sexual contact. Unbeknownst to Victim 2, **BERRY** supplied a quantity of an unidentified substance, which she obtained from R.S., to Victim 2. Victim 2 then became unconscious. After Victim 2 was incapacitated, **BERRY** informed R.S. that Victim 2 was unconscious, and R.S. returned to pick up **BERRY**. Acting at R.S.'s direction, **BERRY** stole valuables from Victim 2, including his wallet, approximately $5,000 in United States currency, two Samsung cellular phones, a Nixon wristwatch, assorted men's jewelry, two pairs of Ray-Ban sunglasses, and one pair of Versace sunglasses.

AUSA *Eaf*
Defendant *LB*
Defense Counsel *CCR*

### Victim 3: Peoria, Arizona—December 2016

The Government would further establish, through the introduction of documentary evidence and eyewitness testimony, that **BERRY** met Victim 3, an adult male, in Peoria, Arizona, in about December 2016. Victim 3 met **BERRY** by responding to an advertisement located on the online classified advertisement marketplace Craigslist, advertisement number 5914327163, which was posted on the Personals section and the "Men for Women" subsection. Thereafter, **BERRY** and Victim 3 corresponded by text message, and they agreed to meet at Victim 3's residence. R.S. drove **BERRY** to Victim 3's residence and dropped her off. Once at Victim 3's residence, **BERRY** and Victim 3 consumed alcoholic beverages. **BERRY** supplied a quantity of an unidentified substance to Victim 3 without his knowledge or authorization. **BERRY** obtained the substance from R.S. Victim 3 then "blacked out." After Victim 3 was incapacitated, **BERRY** informed R.S. that Victim 3 was unconscious, and R.S. returned to pick up **BERRY**. Acting at R.S.'s direction, **BERRY** stole valuables from Victim 3, including his wallet, tablet computer, cellular telephone, and approximately five firearms. The firearms stolen included two handguns, one rifle, one shotgun, and an automatic rifle (an AR-15). **BERRY** and R.S. attempted to use one of Victim 3's credit cards at a Shell gas station in the Tempe, Arizona area unsuccessfully.

### Victim 4: Sacramento, California—December 2016

The Government would further establish, through the introduction of documentary evidence and eyewitness testimony, that **BERRY** met Victim 4, an adult male, on about December 22, 2016. **BERRY** met through a Craigslist advertisement Victim 4 posted. Victim 4 and **BERRY** agreed to meet at Victim 4's residence in the Sacramento, California area. Shortly thereafter, R.S. drove **BERRY** to Victim 4's residence, where they consumed alcoholic beverages. **BERRY**

AUSA *FAP*
Defendant *AB*
Defense Counsel *CEK*

supplied a quantity of Xanax and Ativan, controlled substances that function as sedatives, to Victim 4 without his knowledge or authorization. **BERRY** obtained the substances from **R.S.** After Victim 4 was incapacitated, **BERRY** informed **R.S.** that Victim 4 was unconscious, and **R.S.** returned to pick up **BERRY**. Acting at **R.S.**'s direction, **BERRY** stole valuables from Victim 4, including approximately $300 in cash, a Home Depot credit card, his driver's license, his state-issued prescription marijuana card, two smartphones, a netbook computer, and one pound of medical marijuana.

The Government would further establish that on about December 22, 2019, **BERRY** and **R.S.** traveled to a Home Depot store located near Sacramento, California in a white Mercedes Benz automobile driven by **R.S.** Once at the Home Depot store, **R.S.** used Victim 4's Home Depot credit card to make a purchase in the amount of approximately $181.00 without Victim 4's knowledge or authorization.

### Victim 5: Metairie, Louisiana—February 2017

The Government would further establish, through the introduction of documentary evidence and security camera footage that on the evening of February 24, 2017, Victim 5 (hereinafter "S.A.") met **BERRY** through a social media cellular phone application designed to meet and interact with strangers. Thereafter, S.A. exchanged numerous phone calls and text messages with phone number (504) 339-3990, a phone number used by **BERRY**. At approximately 9:30 pm, **R.S.** dropped **BERRY** off at S.A.'s apartment, located in Metairie, Louisiana, within the Eastern District of Louisiana. **R.S.** provided the anti-psychotic medications to **BERRY** before dropping her off at S.A.'s apartment for the purpose of having **BERRY** drug

AUSA _EMP_
Defendant _ALB_
Defense Counsel _CEK_

and incapacitate S.A. Over the next several hours, S.A. and **BERRY** consumed alcoholic beverages, including beer and bourbon whiskey.

The Government would further establish that, acting in accordance with **R.S.**'s instructions, **BERRY** placed drugs designed to incapacitate S.A., including multiple anti-psychotic medications, into S.A.'s beverage without his knowledge or authorization. After S.A. lost consciousness, **BERRY** contacted **R.S.** by text message and told him that S.A. was incapacitated. Thereafter, **R.S.** returned to S.A.'s apartment, where over the next several hours he and one or more additional co-conspirators stole numerous items belonging to S.A., including S.A.'s wallet, two cellular phones, his keys, and his 2012 Toyota Tacoma truck. On about February 25, 2017, detectives with the Jefferson Parish Sheriff's Office responded to a wellness check at S.A.'s residence and found him to be deceased. Among its findings, toxicology tests found anti-psychotic medications in S.A.'s body and determined them to have contributed to his death.

The Government would further establish, through the introduction of testimony from a representative of JPMorgan Chase Bank, N.A. ("Chase Bank") that Chase Bank was a financial institution located in New Orleans, Louisiana, within the Eastern District of Louisiana, and elsewhere, the deposits of which are insured by the Federal Deposit Insurance Corporation.

The Government would further admit, through the introduction of documentary evidence and recorded security camera footage, that on about February 25, 2017, **R.S.** and **BERRY** used one of the debit cards stolen from S.A.'s residence, a Chase Bank debit card bearing his name, to make a series of unauthorized purchases, including at a Walmart Super Center located in New Orleans, Louisiana in the amount of $81.04 and at a Discount City market/gas station located in New Orleans, Louisiana in the amount of $71.16. The aforementioned purchases caused the

AUSA _EeP_
Defendant _ALB_
Defense Counsel _OCP_

transmission by means of wire communications to travel in interstate commerce, namely from the State of Louisiana to destinations outside the State of Louisiana, for the purpose of executing **R.S.** and **BERRY'S** scheme to defraud. Additionally, as a result of R.S. and **BERRY'S** actions with respect to S.A.'s Chase Bank debit card, on or about February 25, 2017, in the Eastern District of Louisiana, Chase Bank, a financial institution whose deposits are insured by the Federal Deposit Insurance Corporation, lost, incurred a risk of being deprived, and was in fact deprived, of moneys owned and under the custody and control of Chase Bank. By engaging in the behavior outlined above, **R.S.** and **BERRY** did knowingly devise, intend to devise, and did in fact execute a scheme and artifice to defraud Chase Bank by obtaining money owned by and under the custody and control of Chase Bank. As a result of the actions of **R.S.** and **BERRY**, Chase Bank incurred a risk of financial loss as described above.

The Government would further establish, through the introduction of documentary evidence and recorded security camera footage that, lacking S.A.'s authorization or other lawful authority, **BERRY** and **R.S.**, independently and together, knowingly possessed and used a means of identification of S.A., specifically his Chase Bank debit card bearing account number x8230 and in the name of S.A., during and in relation to their commission of wire fraud and bank fraud as described above.

### Victim 6: Houston, Texas—July 2017

The Government would further establish, through the introduction of documentary evidence and eyewitness testimony, that **BERRY** met Victim 6, an adult male, in about July 2017 in Houston, Texas. **BERRY** and Victim 6 met initially on the online classified advertisement marketplace Craigslist. Victim 6 and **BERRY** agreed to meet at Victim 6's residence in the

AUSA _ff_
Defendant _ACB_
Defense Counsel _CCB_

Houston, Texas area. Shortly thereafter, **R.S.** drove **BERRY** to Victim 6's residence, where they consumed alcoholic beverages. **BERRY** supplied a quantity of one or more unknown substances to Victim 6 without his knowledge or authorization. **BERRY** obtained the substances from **R.S.** After Victim 6 was incapacitated, **BERRY** informed **R.S.** that Victim 6 was unconscious, and **R.S.** returned to pick up **BERRY**. Acting at **R.S.**'s direction, **BERRY** stole valuables from Victim 6, including his wallet, approximately $200 in United States currency, a laptop computer, and six credit cards.

The Government would further establish that on about July 4, 2017, **BERRY** and **R.S.** used one of the credit cards they stole from Victim 6, a Wells Fargo credit card, to make a purchase in the amount of approximately $200 without his authorization. **BERRY** and **R.S.** used another one of the credit cards they stole from Victim 6, a Discover credit card, to make a purchase in the amount of approximately $200 without his authorization.

### Victim 7: Kennesaw, Georgia—August 2017

The Government would further establish, through the introduction of documentary evidence and eyewitness testimony, that **BERRY** met Victim 7, an adult male, in about August 2017 in Kennesaw, Georgia. Victim 7 met **BERRY** initially via a social media cellular phone application. Victim 7 and **BERRY** agreed to meet at Victim 7's residence in the Kennesaw, Georgia area. Shortly thereafter, **R.S.** drove **BERRY** to Victim 7's residence in a white Mercedes Benz vehicle. Once at Victim 7's residence, **BERRY** and Victim 7 consumed alcoholic beverages. **BERRY** supplied a quantity of an unknown substance to Victim 7 without his knowledge or authorization. **BERRY** obtained the substance from **R.S.** After Victim 7 was incapacitated, **BERRY** informed **R.S.** that Victim 7 was unconscious, and **R.S.** returned to pick up **BERRY**.

AUSA _[signature]_
Defendant _[signature]_
Defense Counsel _[signature]_

Acting at **R.S.**'s direction, **BERRY** stole valuables from Victim 7, including his credit cards, a silver iPad, a black iPad, and two cellular phones.

The Government would further establish that on about August 9, 2017, **BERRY** and **R.S.** traveled to a Walmart store in Marietta, Georgia, and sold one of Victim 7's iPads without his authorization. On about August 21, 2017, **BERRY** and **R.S.** traveled to another Walmart store, in Dunwoody, Georgia, and sold the other iPad belonging to Victim 7 without his authorization. **BERRY** presented her Louisiana Identification Card at each sale. Additionally, **BERRY** and **R.S.** traveled in a white Mercedes Benz vehicle to at least three Target stores located in Smyrna, Georgia, Kennesaw, Georgia, and Atlanta, Georgia, respectively on about August 9, 2017. At each Target store, **R.S.** and **BERRY** used Victim 7's credit card to make purchases without Victim 7's knowledge or authorization.

### Victim 8: Marietta, Georgia—August 2017

The Government would further establish, through the introduction of documentary evidence and eyewitness testimony, that **BERRY** met Victim 8, an adult male, in the Marietta, Georgia area in about August 2017. Victim 8 met **BERRY** through the social media cellular phone application Tinder. Victim 8 and **BERRY** agreed to meet at Victim 8's residence in the Marietta, Georgia area. Shortly thereafter, **R.S.** drove **BERRY** to Victim 8's residence in a white Mercedes Benz vehicle. Once at Victim 8's residence, **BERRY** and Victim 8 consumed alcoholic beverages. **BERRY** supplied a quantity of an unknown substance to Victim 8 without his knowledge or authorization. **BERRY** obtained the substance from **R.S.** After Victim 8 was incapacitated, **BERRY** informed **R.S.** that Victim 8 was unconscious, and **R.S.** returned to pick up **BERRY**. Acting at **R.S.**'s direction, **BERRY** stole valuables from Victim 8, including his wallet, his driver's

AUSA _CaP_
Defendant _LLB_
Defense Counsel _CCK_

license, a debit card belonging to Victim 8, a credit card belonging to Victim 8, and approximately $150 in cash. Subsequently, **BERRY** and **R.S.** used Victim 8's debit card had been used to make purchases totaling more than $1,300 without his knowledge or authorization. Among the unauthorized purchases made using Victim 8's debit card was a charge in the amount of approximately $183, to repay an overpayment related to a Pell Grant in the name of "B.S.," the ex-wife of **R.S.**, an online purchase at Nordstrom in the amount of approximately $747.77, which was delivered to B.S.'s residence in Downey, California, and the purchase of groceries and four gift cards at a Kroger grocery store in Decatur, Georgia.

### Victim 9: Sandy Springs, Georgia—September 2017

The Government would further establish, through the introduction of documentary evidence and eyewitness testimony, that **BERRY** met Victim 9, an adult male, in the Sandy Springs, Georgia area in about September 2017. Victim 9 met **BERRY** through a social media application/website. Victim 9 and **BERRY** agreed to meet at a CVS pharmacy near Victim 9's residence in the Sandy Springs, Georgia area. Shortly thereafter, **R.S.** drove **BERRY** to the CVS pharmacy in a white Mercedes Benz vehicle. Based on representations made by **BERRY**, Victim 9 agreed to have **BERRY** come to his residence for the purpose of engaging in sexual contact. **BERRY** exited **R.S.**'s car and got into Victim 9's car for the purpose of returning with Victim 9 to Victim 9's residence. Once at Victim 9's residence, **BERRY** and Victim 9 consumed alcoholic beverages and engaged in sexual contact. While at Victim 9's residence **BERRY** supplied a quantity of an unknown substance to Victim 9 without his knowledge or authorization. **BERRY** obtained the substance from **R.S.** Victim 9 then lost consciousness. After Victim 9 was incapacitated, **BERRY** informed **R.S.** that Victim 9 was unconscious, and **R.S.** returned to pick

AUSA _GaP_
Defendant _tPB_
Defense Counsel _ccJc_

up **BERRY**. Acting at **R.S.**'s direction, **BERRY** stole valuables from Victim 9, including his Jeep Grand Cherokee, multiple smartphones, a laptop computer, and a safe.

The Government would further establish that on about September 13, 2017, after Victim 9 regained consciousness he used the "Find My iPhone" application to locate one of his missing cellphones. The application indicated that the phone was located at an Extended Stay Hotel, located at 1050 Hammond Drive, Sandy Springs, Georgia. Victim 9 notified law enforcement authorities, who traveled to the Extended Stay Hotel. Law enforcement authorities observed the Mercedes Benz used to drop off **BERRY** at the CVS pharmacy parked in front of Room 303, which was rented in **R.S.**'s name. Law enforcement authorities observed **R.S.** leave Room 303 and attend to the Mercedes Benz. Thereafter, law enforcement authorities knocked on the door to Room 303, and **BERRY** answered the door. **BERRY** was bleeding from her nose, had a swollen lip and puncture consistent with her teeth biting through her lip, and black electrical tape around one of her arms. Law enforcement authorities subsequently recovered numerous items belonging to Victim 9 from Room 303.

The above facts would be proven at trial by credible testimony from Special Agents from the Federal Bureau of Investigation, representatives of numerous financial and retail institutions, documents and tangible exhibits in the custody of the Federal Bureau of Investigation, and the statements of the defendant, **DOMINIQUE ALAINA BERRY**.

AUSA _FaP_
Defendant _ADB_
Defense Counsel _CCM_

**Limited Nature of Factual Basis**

This proffer of evidence is not intended to constitute a complete statement of all facts known by **DEFENDANT** and/or the Government. Rather, it is a minimum statement of facts intended to prove the necessary factual predicate for their guilty pleas. The limited purpose of this proffer is to demonstrate that there exists a sufficient legal basis for the plea of guilty to the charged offenses by **DEFENDANT**.

_____  12-5-19
DOMINIQUE ALAINA BERRY    Date
Defendant

_____  12/5/19
CELIA RHOADS              Date
Attorney for Defendant Dominique Alaina Berry
Bar Roll No. NY 5317185

_____  12/5/19
JORDAN GINSBERG           Date
Assistant United States Attorney
Illinois Bar Roll No. 6282956

_____  12/5/19
ELIZABETH PRIVITERA       Date
Assistant United States Attorney
Louisiana Bar Roll No. 27042